UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.: 16-1266-JLS (KESx)　　　　　　　　　　　　　　Date: September 18, 2018
Title: Rosa Calderon, et al. v. The Wolf Firm, Inc.

Present: **HONORABLE JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Terry Guerrero | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:　　ATTORNEYS PRESENT FOR DEFENDANT:

Not Present　　　　　　　　　　　　　　　　　　Not Present

**PROCEEDINGS:** **(IN CHAMBERS) ORDER (1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Doc. 72); AND (2) GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS (Doc. 71)**

Before the Court are two unopposed Motions filed by Plaintiffs Rosa and Javier Calderon, seeking final approval of the class action settlement and approval of the requested attorneys' fees, costs, and class representative incentive awards. (Mot. for Final Approval, Doc. 72; Fee Mot., Doc. 71.) Having reviewed the papers, held a fairness hearing, and taken the matter under submission, the Court GRANTS the Motion for Final Approval of the Class Action Settlement and GRANTS the Motion for Attorneys' Fees, Costs, and Class Representative Incentive Awards.

I.　　**BACKGROUND**

　　A.　　**Procedural History**

On July 8, 2016, Plaintiffs filed a class action lawsuit against the Wolf Firm. (Compl., Doc. 1.) On December 5, 2016, they filed a First Amended Complaint. (FAC, Doc. 32.) In the FAC, Plaintiffs allege the following claims: (1) violation of the FDCPA,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 16-1266-JLS (KESx)                          Date: September 18, 2018

Title: Rosa Calderon, et al. v. The Wolf Firm, Inc.

15 U.S.C. §§ 1692-1692(p); and (2) violation of the RFDCPA, Cal. Civ. Code §§ 1788-1788.32. (FAC ¶¶ 60–65.)

      On December 20, 2016, the Wolf Firm moved to dismiss the FAC. (MTD, Doc. 38.) The Court denied the motion on January 18, 2017. The Wolf Firm filed an Answer to the FAC on February 1, 2017. (Doc. 43.) The parties then engaged in informal discovery and settlement negotiations. Plaintiffs filed a Joint Stipulation re Settlement on September 22, 2017. (Doc. 49.)

      On November 13, 2017, Plaintiffs filed their unopposed motion for preliminary approval of the class action settlement (the "Settlement"). (Prelim. Approval Mot., Doc. 51.) On December 12, 2017, the Court ordered the parties to submit supplemental briefing to remedy deficiencies in their motion, such as the lack of support for Phoenix Settlement Administrators (PSA) as the claims administrator and the failure to provide the Court with evidence of the Wolf Firm's net worth. (Order, Doc. 53.) On January 10, 2018, the Court issued an order for supplemental briefing with evidence of the Wolf Firm's net worth because the parties' submission of an income statement from the Wolf Firm did not satisfy the Court's prior request. (Order, Doc. 59.) On January 24, 2018, the Court issued yet another order for supplemental briefing on the issue of the Wolf Firm's net worth because the parties submitted documents with no briefing explaining their contents. (Order to Show Cause Re: Sanctions, Doc. 61.) The Court noted that failure to comply fully with the order could result in the imposition of sanctions. (*Id.*) After receiving and reviewing the materials submitted by the parties, the Court discharged the Order to Show Cause Re: Sanctions on February 5, 2018.

      On March 13, 2018, the Court granted Plaintiffs' unopposed motion for preliminary approval of the Settlement, finding that the amount offered in the Settlement was fair, adequate, and reasonable. (Prelim. Approval Order, Doc. 66.) The Court also approved the proposed method of notice to Class Members but required the parties to make certain changes to the proposed Settlement Notice. (*Id.* at 20–21.) After the parties made the required revisions, the Court approved the Settlement Notice forms and ordered them to be disseminated in accordance with the approved notice plan. (*See* Order Approving Settlement Notice, Doc. 70.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.: 16-1266-JLS (KESx) | Date: September 18, 2018 |
| Title: Rosa Calderon, et al. v. The Wolf Firm, Inc. | |

### B. The Settlement

As discussed in the Court's Preliminary Approval Order, the Settlement Agreement defines two classes. The first, a national class, is defined as "[a]ll persons with addresses within the U.S. who received an initial demand letter from Defendant from July 8, 2015 to the date of entry of the Preliminary Approval of Settlement and Notice Order." (Settlement Agreement ¶ 3.13.2, Doc. 51-3.) The second is a subclass including "[a]ll persons with addresses within the State of California who received an initial demand letter from Defendant from July 8, 2015 to the date of the entry of the Preliminary Approval of Settlement and Notice Order." (*Id.*) The parties estimate that there are a total of 114 class members across both classes. (*Id.* ¶ 3.14.)

The Settlement provides for a full-distribution, non-reversionary settlement fund of $68,000. (*Id.* ¶ 4.1.) Pursuant to 15 U.S.C. section 1692k(a)(2)(B), liability for debt collection is limited, in the case of a class action, to "such amount for each named plaintiff as could be recovered under subparagraph (A), and . . . such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." Accordingly, the total amount available for class members is $1,785.24, which the parties assert is one percent of the Wolf Firm's net worth. (*Id.* at 5.1.) Each of the 114 class members would receive $15.66 from the fund. (Prelim. Approval Mem. at 7.) The Settlement provides that class counsel will petition the Court for an incentive award of $2,000.00 for each class representative, and for an award of attorneys' fees and costs not to exceed $56,414.76. (Settlement Agreement ¶¶ 6.1–6.2.) The fund also includes notice and claims administration costs. (*Id.* ¶ 9.3.) The parties have also negotiated injunctive relief; the Wolf Firm will agree to update its form letter to conform to the requirements of the FDCPA and the RFDCPA. (*Id.* ¶ 5.5)

In return for net settlement fund payments, settlement class members fully release and discharge the Wolf Firm from the following:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 16-1266-JLS (KESx)                          Date: September 18, 2018
Title: Rosa Calderon, et al. v. The Wolf Firm, Inc.

> (A) all claims alleged in the Complaint; (B) all claims, including Unknown Claims, arising, in whole or in part, whether fully or only partially accrued, out of any transaction, fact, matter, thing, event or occurrence alleged in the Complaint; and (C) all claims, including Unknown Claims, regardless of on what legal theory based, for actual damages, statutory damages, punitive damages, civil fines, restitution, unjust enrichment, disgorgement, or other monetary relief of any and every kind . . . arising, in whole or in part, whether fully or only partially accrued, by receipt of a letter from Defendant on or before the date of this Agreement.

(Settlement Agreement ¶ 7.1.2.) The release applies as to the Wolf Firm and "Subsidiaries, their agents, clients, layers, officers, managers, employees, affiliates, shareholders, insurers and their reinsurers, and assignees." (*Id.*)
Class members will not be required to submit a claim form to receive benefits under the Settlement Agreement. (*Id.* ¶ 5.2.1.) Each class member who does not exclude herself will be mailed a check. Any uncashed checks after ninety-one days will be cancelled. (*Id.* ¶ 5.4.2.) The Settlement Agreement provides that unclaimed funds will either be redistributed "if practical" or directed to a Court-approved *cy pres* recipient. (*Id.* ¶ 4.5.2.) In its Preliminary Approval Order, the Court ordered the parties to provide notice of their proposed *cy pres* recipient (Prelim. Approval Order at 16), and the parties notified the Court on March 23, 2018 that their proposed *cy pres* recipient is Legal Aid Society of Orange County & Community Legal Services of Southeast Los Angeles County (which operate as a common entity) (LASOC). (Status Report Re: Proposed Cy Pres Recipient, Doc. 68.) Having reviewed the submission, the Court approves of LASOC as the *cy pres* recipient.

       **C.**       **Notice and Response**

Notice was sent to Class Members pursuant to the method proposed by the Settlement and approved by the Court. (Preliminary Approval Order at 20–21.) The revised Settlement Notice adequately describes the litigation and the scope of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  16-1266-JLS (KESx)                                    Date: September 18, 2018
Title:  Rosa Calderon, et al. v. The Wolf Firm, Inc.

involved Class and explains (1) the amount and makeup of the Settlement Fund; (2) the plan of allocation; (3) that Class Counsel will apply for attorneys' fees and costs, and Class Representatives will seek an incentive award; and (4) Class Members' options to participate in or object to the Settlement. (*See* Long-Form Notice, Doc. 67-1; Order Approving Settlement Notice.)

On March 29, 2018, class counsel provided PSA with a list of 114 persons identified as class members. (Kruckenberg Decl. ¶ 3, Doc. 72-3.) On April 13, 2018, Settlement Notices were mailed to the 114 class members. (*Id*. ¶ 5.) 12 Settlement Notices were returned as undeliverable, and 1 was returned with a forwarding address. (*Id.* ¶ 6.) For the 11 without forwarding addresses, PSA successfully performed "skiptrace" searches for 6 of them. (*Id*.) As of July 24, 2018, 8 Notices were considered undeliverable; 6 were undeliverable because an updated address could not be obtained and 2 were returned a second time. (*Id.* ¶ 7.) As of May 29, 2018, the deadline for requests for exclusion or objections, PSA received no objections or requests for exclusion to the Settlement. (*Id.* ¶¶ 8–9.)

Based on the amount stipulated in the Settlement, all Class Members will receive an equal amount of $15.66. (*Id.* ¶ 11.)

## II.     FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A.     Legal Standard

Before approving a class-action settlement, Rule 23 of the Federal Rules of Civil Procedure requires the Court to determine whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  16-1266-JLS (KESx)                                                    Date: September 18, 2018
Title:  Rosa Calderon, et al. v. The Wolf Firm, Inc.

governmental participant; and (8) the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citation and internal quotation marks omitted).[1]  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety."  *Staton*, 327 F.3d at 960 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

### B.  **Discussion**

In its Preliminary Approval Order, the Court evaluated each of the factors identified above to determine whether the Settlement is fair, reasonable, and adequate under Rule 23.  (Prelim. Approval Order at 13–18.)  The Court determined that the following factors weighed in favor of approval: (1) the strength of Plaintiffs' case; (2) the risk, complexity, and likely duration of further litigation; (3) the risk of maintaining class certification; (4) the amount offered in settlement; (5) the stage of the proceedings and extent of discovery completed; and (6) the experience and views of Class Counsel.  (*Id.*)  The Court was also satisfied that there were no signs of collusion between the parties.  (*Id.* at 17–18.)  Finally, the Court found that conditional certification of the Class for settlement purposes was proper because the Class meets all of the Rule 23(a) and 23(b) requirements.  (*Id.*  6–11.)  The Court sees no reason to depart from its previous conclusions.  The Court therefore incorporates its analysis from the Preliminary Approval Order into the instant Order.

However, at the time of preliminary approval, Plaintiffs did not provide evidence of Class Members' reactions to the proposed Settlement Agreement.  (*Id.* at 17.)  Since

---

[1] Factor (7), the presence of a governmental participant, does not apply to this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 16-1266-JLS (KESx)                  Date: September 18, 2018
Title: Rosa Calderon, et al. v. The Wolf Firm, Inc.

that time, PSA sent 114 Settlement Notices to Class Members by first-class mail. (Kruckenberg Decl. ¶ 5.) PSA has received no written objections to the Settlement and no requests for exclusion. (*Id*. ¶¶ 8–9.) A small number of objections and opt-outs at the time of the fairness hearing may raise a presumption that the settlement is favorable to the class, and given the lack of any objections or requests for exclusions here, this factor weighs in favor of granting final approval. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

      Considering all of the factors together, the Court concludes that the Settlement is fair, reasonable, and adequate. Accordingly, the Court GRANTS Plaintiffs' Motion for Final Approval of the Class Action Settlement.

### III. ADMINISTRATION EXPENSES

      The Settlement Agreement provides that PSA will be provided payment for its services. (Settlement ¶¶ 3.29, 4.2.) Plaintiffs request that PSA be paid $5,800.00 despite PSA actually incurring $8,694.41 in providing service to the Plaintiffs. (Final Approval Mem. at 11–12; Kruckenberg Decl. ¶ 12; Ex. 6 to Kruckenberg Decl., Doc. 72-5.) The Court finds these expenses to be reasonable and adequately documented.

      Accordingly, the Court GRANTS the Motion as to the costs of administration.

### IV. ATTORNEYS' FEES

      Plaintiffs seek an attorneys' fee award of $55,641.76.[2] (Fee Mem. at 1.) In its order granting Preliminary Approval of the Settlement, the Court noted its concerns about

---

[2] This number is the requested award less the $733.00 in costs, which are discussed separately below. (Fee Mem. at 17.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 16-1266-JLS (KESx)                      Date: September 18, 2018
Title: Rosa Calderon, et al. v. The Wolf Firm, Inc.

the requested fee award being quite large in comparison to the $1,785.24, or $15.66 each, being awarded to the 114 class members. (Prelim. Approval Order at 15–16.)

     Rule 23 permits a court to award "reasonable attorneys' fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

     The award to the class members is the maximum amount permitted by the FDCPA and RFDCPA and the fee award being paid by Defendant is independent of the amount awarded to the class. (Fee Mem. at 19.) As such, this is not a common fund case and "whatever amount of fees is awarded to class counsel, it will not affect the amount going to class members." *Tait v. BSH Home Appliances Corp.*, No. SACV10-711 DOC (ANx), 2015 WL 4537463, at *11 (C.D. Cal. July 27, 2015). "In FDCPA cases, '[d]istrict courts must calculate awards for attorneys' fees using the lodestar method . . . and the amount of that fee must be determined on the facts of each case.'" *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008)). The "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton v. Boeing*, 327 F.3d 938, 965 (9th Cir. 2003)).

     Once a "lodestar figure" is at hand, the Court may consider the twelve *Kerr* factors: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *See Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *see*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 16-1266-JLS (KESx)                    Date: September 18, 2018
Title: Rosa Calderon, et al. v. The Wolf Firm, Inc.

*also Tait*, 2015 WL 4537463, at *13–14 (applying the *Kerr* factors after calculating the lodestar for a fee-shifting class action).

### A. Reasonable Hours and Rates Calculation

#### a. Reasonable Hours

"[A] 'reasonable' number of hours equals '[t]he number of hours ... [which] could reasonably have been billed to a private client." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008)). To make this determination, the Court "should begin with the billing records the prevailing party has submitted." *Id.* Thereafter the Court may, but is not required to, consider opposing counsel's billing records as a point of comparison. *Id.* Of course, the Court must exclude entries for hours that are "excessive, redundant, or otherwise unnecessary." *Id.* at 1203 (quoting *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2008)). These sorts of entries may be excluded either through an hour-by-hour analysis, or, where the billing records at issue are voluminous, by applying an across the board cut. *Id.* As the Ninth Circuit has held, "[t]he district court may not 'uncritically' accept the number of hours claimed by the prevailing party, even if actually spent on the litigation, but must, in order to award fees based on them, find 'that the time actually spent was reasonably necessary.'" *Carson v. Billings Police Dept.*, 470 F.3d 889, 891 (9th Cir. 2006) (citation omitted).

Class counsel here submitted that they spent 110.75 hours working for Plaintiffs. (Fee Mem. at 7.) Yet, upon review of their billing records, the Court finds some of the entries by Loker and Cardoza to be unreasonable. For example, Loker billed .60 hours to come to the conclusion that Defendant's motion to dismiss was filed in violation of Local Rule 7.3, noting "[c]all was only a few days ago so it seems early." (Ex. 1 to Loker Decl. at 5, Doc. 71.3.) Surely coming to the realization that the motion was filed less than a week after the call took only a few minutes. Further, Loker repeatedly billed time for items appearing on the docket: "D filed their MTD" for .20 hours; "D filed their reply"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  16-1266-JLS (KESx)            Date: September 18, 2018
Title:  Rosa Calderon, et al. v. The Wolf Firm, Inc.

for .10 hours; "Judge Staton issued Minute Order asking for copy of the letter at issue" for .10 hours; "D filed letter with Court" for .10 hours. (*Id.* at 5–6.) It is unclear what Loker was billing for in these instances, as the time entry does not reflect that he reviewed the documents, but merely that the documents had been filed. Cardoza was also vague in his entries. He repeatedly described entries as "Client Communications" and "Research and Investigation." Other times he was more descriptive, billing for "Research and Investigation: Judicial order review" and "Client Communication: re Mediation," for example, showing the capability for more descriptive entries. (*See* Ex. 4 to Loker Decl. at 1-2, Doc. 71-7.) When billing entries are vague so "as to prevent the Court from assessing the reasonableness of the time" billed, the district court may reduce the award accordingly. *See Tait*, 2015 WL 4537463, at *13 (finding entries such as "[r]eview background materials" to be overly vague).

Moreover, Loker billed 2 hours preparing for and responding to the Court's Order to Show Cause Re: Sanctions. (Ex. 1 to Loker Decl. at 9.) As discussed above, the Court's Order to Show Cause was issued after class counsel repeatedly failed to comply with this Court's previous orders. But for class counsels' failure to provide the Court with relevant documents in a timely fashion, a response to the Order would not have been necessary.

Accordingly, the Court concludes that a ten (10) percent reduction in the hours billed by Loker and Cardoza is appropriate. Loker's 72.3 hours will be reduced to 65.07, and Cardoza's from 12.45 to 11.21. The Court finds the hours billed by Kazerounian and Swigart, 13.2 and 12.8, respectively, to be reasonable.

    **b. <u>Reasonable Rates</u>**

"[T]he district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). This determination "is not made by reference to rates actually charged [by] the prevailing party." *Id.* The fee applicant bears the burden of showing that "the requested rates are in line with those prevailing in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 16-1266-JLS (KESx)                            Date: September 18, 2018
Title: Rosa Calderon, et al. v. The Wolf Firm, Inc.

community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 980 (9th Cir. 2008) (citation omitted). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp*., 896 F.2d 403, 407 (9th Cir. 1990).

      Here, Plaintiffs seek to recover fees at an hourly rate of $625 for Kazerounian, $625 for Swigart, $525 for Loker, and $525 for Cardoza. (Fee Mem. at 7.) Plaintiffs submitted declarations supporting each attorney's extensive experience in the area of consumer rights and debt collection. (*See* Fee Mem. at 6; Kazerounian Decl. ¶¶ 11–17, Doc. 51-9; Swigart Decl. ¶¶ 9–10, Doc. 51-10; Loker Decl. ¶¶ 22–23, Doc. 51-2.; Cardoza Decl. ¶¶ 9–17, Doc. 71-6.) Plaintiffs have shown that other courts have repeatedly approved of rates of $625 an hour for Kazerounian and Swigart. (*See* Fee Mem. at 6–7.) Courts have approved hourly rates of $495 and $505 for Loker and Plaintiffs put forth no evidence of rates that courts have approved for Cardoza. (*See id.* at 7.) Plaintiffs also point to the United States Consumer Law Attorney Fee Summary Report for support of counsels' rates. (*Id.*; Ex. 3 to Loker Decl., Doc. 71-5.) Because "consumer attorneys in the Los Angeles area bill between $325 and $725 per hour," and counsels' requested rates are all within this rage, Plaintiffs argue that class counsels' rates are all reasonable. (Fee Mem. at 8.)

      The Court is persuaded that the rates for Kazerounian and Swigart are reasonable because other courts on multiple occasions have approved of the exact rates requested. But, the Court finds the rates for Loker and Cardoza to be unreasonably high. Given the tasks for which Loker was billing, as discussed above, an hourly rate higher than any court has approved for him is not warranted. The Court finds it reasonable to reduce his rate to $505 an hour. As to Cardoza, his declaration makes clear that this matter is the first class action in which he has been involved as counsel, and he cannot support his rates by reference to any past class litigation experience, the Court finds it reasonable to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 16-1266-JLS (KESx)                          Date: September 18, 2018
Title: Rosa Calderon, et al. v. The Wolf Firm, Inc.

reduce his hours to the median rate for consumer attorneys in the Los Angeles area, $450 an hour, as reported in the Plaintiffs' exhibit. (*See* Ex. 3 to Loker Decl. at 183.)

### B. Lodestar Calculation

Under the "lodestar method," the Court "multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). Plaintiffs calculated counsels' lodestar as $60,743.75, but they requested only $55,641.76 in fees as part of the Settlement Agreement. As discussed above, the Court finds reasonable hours and rates for each attorney to be: 13.2 for Kazerounian at $625 an hour; 12.8 for Swigart at $625 an hour; 65.07 for Loker at $505 an hour; and 11.21 for Cardoza at $450 an hour. Thus, before the hearing on this matter, the Court calculated the lodestar as $54,154.85.

At the hearing, class counsel indicated that they had billed significant hours since filing the Motion, and the Court permitted Plaintiffs to file a Supplemental Declaration regarding the additional hours. The Supplemental Declaration filed by Plaintiffs on September 12, 2018 states that Kazerounian and Loker have billed 33.3 hours since filing the Motion and that class counsel's lodestar has correspondingly increased by $18,992.50. (Supp. Decl. ¶ 16, Doc. 74.) While time entries again appear excessive (Kazerounian and Loker billed 25.6 hours preparing for, traveling to and from, and attending the final fairness hearing, at their $625 and $525 an hour rates (Ex. 1 to Supp. Dec., Doc. 74-1)), the Court finds that the additional work is sufficient to justify awarding the full $55,641.76 requested rather than reducing it to $54,154.85. Thus, based on the Supplemental Declaration, the Court grants fees in the amount of $55,641.76 – Plaintiffs' requested award.

### C. *Kerr* Factors

Having determined the lodestar amount, the Court next considers whether any of the *Kerr* factors warrant an upward or downward departure. *See Tait*, 2015 WL 4537463,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 16-1266-JLS (KESx)                  Date: September 18, 2018
Title: Rosa Calderon, et al. v. The Wolf Firm, Inc.

at *13. "Adjustments to this presumptively reasonable amount may then be made based upon the factors set forth in [*Kerr*] to the extent that those factors are not reflected in the lodestar calculation." *Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109, 1115–16 (C.D. Cal. 2012).

Here, Plaintiffs argue that the *Kerr* factors support the reasonableness of their requested fee award. (Fee Mem. at 9–17.) Many of the *Kerr* factors, such as the time required, customary fee, and the experience and reputation of the attorneys are already reflected in the lodestar calculation above. The Court finds that the rest of the *Kerr* factors do not weigh in favor of any adjustment.

Accordingly, the Court awards attorneys' fees in the full amount requested – $55,641.76.

## V.     LITIGATION COSTS

Plaintiffs request that the Court approve the reimbursement of $773.00 in litigation expenses and costs. (Fee Mem. at 17.) "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision*, 559 F. Supp. 2d at 1048. The Court finds the various expenses adequately documented and reasonable. (*See* Ex. 2 to Loker Decl., Doc. 71.4.)

Accordingly, the Court GRANTS Plaintiffs' request for litigation costs of $773.00.

## VI.     CLASS REPRESENTATIVE SERVICE AWARDS

Javier and Rosa Calderon each seek an incentive award of $2,000 for their time spent as Class Representatives. (Final Approval Mem. at 10.) Incentive awards are "discretionary … and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 16-1266-JLS (KESx)                                           Date: September 18, 2018
Title: Rosa Calderon, et al. v. The Wolf Firm, Inc.

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000)). "To [further] assess whether an incentive payment is excessive, district courts balance 'the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment.'" *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 462 (E.D. Cal. 2013) (quoting *Staton*, 327 F.3d at 977).  Courts "must 'evaluate [such] awards individually' to detect 'excessive payments to named class members' that may indicate 'the agreement was reached through fraud or collusion.'" *Id*. (quoting *Staton*, 327 F.3d at 975, 977).

      Here, Plaintiffs argue that a $2,000 incentive award for each of them is proper because they each spent "substantial time and effort prosecuting this action on behalf of the class." (Final Approval Mem. at 11.)  For support, they cite to *Sullivan v. American Express Publishing Corp.*, No. SACV09-142-JST (ANx), 2012 WL 13014989 (C.D. Cal. Feb. 21, 2012), where this Court granted a $1,000 incentive award and reasoned that "[t]he amount of the service award is not excessive, as it comports with the statutory damages Plaintiff would have received if he had prosecuted an individual action under the RFDCPA." *Id.* at *5–6.

      Yet, the Court's decision in *Sullivan* hardly supports a $2,000 dollar incentive award here.  There, the Plaintiff sat for a deposition and was asking for only $1,000. *Id.* Here, the Calderons have not sat for a deposition and are asking for twice as much – for each class representative −as the Court awarded to the single class representative in *Sullivan*.  Furthermore, in *Sullivan* the $1,000 incentive award was about 36 times the $27.50 award distributed to the class members. *Id.* at *1.  The Calderons' requested incentive award of $2,000 would be about 128 times the $15.66 that will be distributed to each class member in this case.  To the extent that the Court considers the fact that there are two class representatives, the award is over 255 times the amount received by the class members.  The Court believes that, to avoid creating incentives that cause a class representative's interest to deviate significantly from the interests of the class members, it is important not to create such a disparity between the amounts received by the class members and the incentive award to the named plaintiffs.  Hence, the Court determines

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.: 16-1266-JLS (KESx) | Date: September 18, 2018 |
| Title: Rosa Calderon, et al. v. The Wolf Firm, Inc. | |

that it is reasonable to award to Javier and Rosa Calderon incentive payments of $750.00 each.

### VII. CONCLUSION

The Court finds the Settlement to be fair, adequate, and reasonable, and accordingly GRANTS the Motion for Final Approval of the Class Action Settlement. The Court also GRANTS in part Plaintiffs' Motion for Attorneys' Fees, Costs, and Class Representative Incentive Payments. The Court awards Class Counsel $55,641.76 in attorneys' fees and $ 773.00 in litigation costs. The Court also awards a Class Representative incentive payment of $750.00 each to Javier and Rosa Calderon. Finally, the Court awards $5,800.00 for the costs of settlement administration. Distribution of the Settlement Fund to the Class shall be made in accordance with the method outlined in the Settlement.

Class Counsel is ordered to file a proposed final judgment within **five (5) days** of entry of this Order.

Initials of Preparer: tg